*67 OPINION.
Moeris:
The petitioner is claiming a value for good will in the amount of $44,000, but admits that the limitations contained in section 826 (a) (4) of the Revenue Act of 1918 will operate to reduce the amount which it is entitled to include in invested capital to $17,500 since there was but $70,000 of its capital stock outstanding on March 3, 1917, and during the years in question. The respondent denies that valuable good will was acquired in exchange for petitioner’s stock, and contends that the later charging off of the balancing entry supports his contention.
The record shows that the business acquired by the petitioner had been operated in the same community for a long period of time, but it fails to give us detailed facts from which we can determine the existence of good will and fix a value therefor. The mere fact that a business of the same kind has been operated in the same locality for a long period of time is not conclusive of the existence of good will. We have heretofore said in the Schulz Baking Co., 3 B. T. A. 470, 473, that “ The valuation of good will is a question of fact and must be determined on the evidence in the record.” An examination of the facts herein indicates to our mind that petitioner has confused good will value with leasehold values.
The testimony of Ross, one of the original purchasers, and Hastings who made the sale of the business and assets as administrator of Joseph H. May’s estate, shows that petitioner is not entitled to include any value for good will in its invested capital. Ross testi *68 fied that he made a thorough investigation of petitioner’s assets and earning power and went over its list of customers with employees of Joseph H. May prior to purchasing the same. Hastings testified that he sold with full knowledge of the tangibles and intangibles which he conveyed, but that he sold rather than attempt to operate the business, and later granted the right to use the name of May to the petitioner. Prior to buying, Ross received the assurances of Hastings and the representative of the lessor that the premises which were held under lease could be released at the expiration of the then existing term. Under these circumstances the sale was consummated, the business as a whole was sold, and immediately thereafter the same assets were conveyed to the petitioner. The original entry made on the petitioner’s journal, which petitioner now claims represents only good will, was entitled “ Franchise, Leasehold, Good will ” and was admitted by Ross to be merely a balancing entry on the books. The testimony is to the effect that the business and assets were purchased for $56,000 cash but the set up on the books shows only $47,900 of the purchase price in tangible assets, unless the difference' be attributed entirely to the leasehold which for invested capital purposes is a tangible asset. In addition to these facts the sale of a portion of the leased premises in 1906 for $26,000 and the subsequent charge off of the remainder of the balancing entry in 1908 after the lease had been renewed, confirm our opinion that whatever value was obtained by the petitioner over and above the consideration paid out, is to be found in the leaseholds rather than in good will. We, therefore, affirm the determination of the respondent on this issue.
In arriving at this decision we have not failed to consider our opinion in the Schulz Baking Co., supra, wherein we determined that good will existed, and then fixed a value therefor based on sales of stock subsequent to incorporation. The distinction between that case and this lies in the fact that we are unable to determine that good will existed in any appreciable quantity. In that case the evidence showed the tremendous increase in production, in this case we are without satisfactory evidence as to production or earnings. The earnings for 1905, 1906, and 1907 and the sale of 165 shares of stock indicate that the business was successfully operated and that earnings were in excess of a fair return on the tangibles acquired, but on the record we are not convinced that petitioner has sustained the burden of proof.
The second issue relates to the correctness of respondent’s adjustments- to petitioner’s inventories for 1918, 1919, and 1920. It is our opinion that such adjustments were erroneous'and petitioner is entitled to reduce its inventories for each of the years in the amount ■of the loss sustained. The respondent evidently proceeded on the *69 theory that petitioner had arbitrarily reduced its inventories each year by a fixed percentage to cover any and all losses. The evidence is otherwise. Each year a physical inventory was carefully made by an officer and director of the petitioner, who actually counted and recorded all the lumber in stock. The amount of the loss determined for each year was arrived at with the same precision and care, and represents in our opinion the best estimate which could be obtained. The fact that this estimate was stated in terms of a percentage does not detract from the uniformity or consistency of the method used. Cf. Hutchins Lumber & Storage Co., 4 B. T. A. 705 The third point relates to the bar of the statute of limitations with respect to the deficiency asserted for 1917. It was admitted that the petitioner’s return for 1917 was filed on or before April 1, 1918. The evidence shows that a so-called “ waiver ” has not been filed by petitioner with respect to such taxes, and that petitioner received the statutory notice of deficiency by letter dated December 22, 1925. More than five years having elapsed since the return was filed and the deficiency notice mailed, it follows that the deficiency is barred by the statute of limitations.
Further proceedings may be had wader Rule 62 (b) and (c).